UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE S. MOORE, RYAN DAVID MOORE, and HELENA COLEMAN-MOORE<br>   Plaintiffs | : <br> : <br> : <br> : | CIVIL ACTION NO. |
| v. | : <br> : | |
| COUNTRY MOTORS II INC. d/b/a BOB'S BUICK GMC OF MILFORD,<br>   Defendant | : <br> : <br> : | JUNE 15, 2017 |

## **COMPLAINT**

### I. **INTRODUCTION**

1.      This is a suit brought by three consumers regarding the purchase and sale, and repossession, of a motor vehicle.  Plaintiffs bring this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant Country Motors II Inc. d/b/a Bob's Buick GMC of Milford ("Country Motors"), for engaging in a "yo-yo" sale of a motor vehicle, also known as a spot delivery.  The illegal, unfair and deceptive actions engaged in consisted of offering financing with Country Motors acting as the creditor, delivering possession of the vehicle to Plaintiffs, demanding they return the Vehicle and then threatening to call the police to try to induce Plaintiffs to return the Vehicle, repossessing the Vehicle, and then re-selling the Vehicle without providing the required notices or accounting for the proceeds.

2.      Plaintiffs allege that Country Motors' conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"); the foreclosure provisions of the Connecticut Retail Installment Sales Financing Act, Conn. Gen. Stat. § 36a-785 ("RISFA"); Article 9 of the Uniform

Commercial Code ("UCC"), Conn. Gen. Stat. §§42a-9-101 *et seq.;* the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat §42-110a *et seq.*; and that its conducted also constituted fraudulent misrepresentation, negligent misrepresentation, and breach of contract.

## II. PARTIES

3. Plaintiff George S. Moore ("George") is a natural person residing in West Haven, Connecticut.

4. Plaintiff Ryan David Moore ("Ryan") is a natural person residing in New Haven, Connecticut, and he is George's nephew.

5. Plaintiff Helena Coleman-Moore is a natural person residing in New Haven, Connecticut, and she is Ryan's mother.

6. Country Motors is a Connecticut corporation that operates a motor vehicle dealership in Milford, Connecticut.

## III. JURISDICTION

7. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

8. This court has jurisdiction over Country Motors because it is a Connecticut corporation that regularly conducts business in this state.

9. Venue in this court is proper, because the parties reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

10. Country Motors, as part of its regular business practice, sells vehicles to consumers who require financing.

11. Consumers who finance their purchases have two options. They can either obtain financing directly from a lender and deliver the loan proceeds to Country Motors, who would treat the transaction in much the same fashion as a cash purchase. Alternatively, consumers can finance their purchases by entering into retail installment contracts directly with Country Motors.

12. Country Motors generally does not retain possession of the retail installment contracts, but instead it assigns the retail installment contracts to third party banks or finance companies, who pay Country Motors in return for the assignment.

13. Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, Country Motors will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

14. Occasionally, Country Motors is unable to obtain a firm commitment to accept assignment of a vehicle at the time that a consumer is ready and willing to proceed with a financed purchase.

15. In some instances, in order to avoid losing the sale, Country Motors will provide a consumer with a retail installment contract in the hope that it will subsequently assign the contract to a finance company.

16. In other instances, finance companies agree to accept assignment of a retail installment contract subject to certain conditions.

17. Under either situation, Country Motors has a general business practice of seeking to bind consumers to the transaction by having them execute retail installment

contracts even though it does not intend to honor the contract if it is unable to assign it to a third party.

18. Helena and her husband Mark Moore went to Country Motors in November 2016 with the intention of purchasing a motor vehicle for Helena's use.

19. Helena did not have sufficient cash to purchase a vehicle, and she intended to finance a majority of the purchase.

20. Helena and Mark Moore selected Country Motors because they has seen advertisements in which Country Motors claimed to have expertise in obtaining financing for individuals without good credit.

21. Helena completed a credit application but was informed that could not be qualified for a vehicle.

22. Helena's son, Ryan, and her brother-in-law, George, agreed to enter into a contract to purchase a vehicle for Helena's use.

23. Helena selected a 2015 Nissan Altima S (the "Vehicle").

24. On information and belief, Country Motors obtained a conditional agreement from Ally Financial to accept assignment of a retail installment contract for the sale of the Vehicle to Ryan and to George.

25. Also on information and belief, Country Motors engaged in credit application fraud in order to secure the approval.

26. Specifically, Country Motors informed Ally Financial that the Vehicle was a SV model, which has enhanced features, when, in reality, it was a less expensive S model that lacked many of the features of a SV model.

27. Additionally, Country Motors did not inform Ally Financial that Ryan and George had submitted applications as an accommodation to Helena, who would be the person making payments and utilizing the Vehicle, even though this information was known to Country Motors.

28. Country Motors' salesman, Kenneth Boykins, told Plaintiffs that they had been approved for financing.

29. Country Motors prepared a purchase order (the "PO") and a retail installment contract (the "Contract") for the sale and financing of the Vehicle to George and Ryan.

30. The Purchase Order provided that George and Ryan were the purchasers, and it described the trim of the Vehicle as an "SV". A copy of the PO is attached hereto as Exhibit A.

31. The Contract provided that George was the "Buyer", Ryan was the "Co-Buyer" and that Country Motors was the "Seller-Creditor". A copy of the Contract is attached hereto as Exhibit B.

32. The PO and Contract included a dealer conveyance fee charge of $599 for Country Motors to process the paperwork necessary to convey title to the Vehicle.

33. The PO and Contract also included a charge for $185 for registration and title.

34. The Contract referenced an assignment to Ally Financial.

35. George and Ryan executed the PO and the Contract, and Country Motors delivered the Vehicle to Helena on or about November 18, 2016.

36. Although Country Motors intended or desired to assign the Contract to Ally Financial at the time that it prepared the PO and Contract and provided it to Plaintiffs for execution, it was unable to do so, it declined to do so, or it did assign the contract but Ally Financial subsequently reassigned the contract to Country Motors.

37. Country Motors did not transfer title of the Vehicle to George and Ryan after they signed the Purchase Order, even though such transfer is required to be made at the time of sale pursuant to Conn. Gen. Stat. § 14-62(d).

38. Instead, Country Motors released the Vehicle to Helena on dealer plates.

39. Country Motors was not able to assign the Contract to Ally Financial or to another finance company.

40. Country Motors subsequently informed Plaintiffs that they were required to return the Vehicle because their financing had not been approved, and also threatened to call the police and have Plaintiffs arrested if the Vehicle was not returned immediately.

41. Plaintiffs were ready, willing, and able to make their payments under the Contract.

42. On or about January 2, 2017, Plaintiffs returned the Vehicle to Country Motors.

43. On information and belief, Country Motors retook possession of the Vehicle because it did not want to be bound by the Contract that it had entered into with Plaintiffs due to its inability to assign the Contract to a third party lender.

44. Country Motors re-sold the Vehicle to another purchaser on or about January 5, 2017.

45. Country Motors has not provided Plaintiffs with any notices in connection with the repossession or sale of the Vehicle.

46. Country Motors has not provided Plaintiffs with any notices in connection with its denial of their credit application or the retraction of the credit that Country Motors had previously extended to them.

## V.   CAUSES OF ACTION

### A. Truth in Lending Act

47. Paragraphs 1-46 are incorporated.

48. To the extent that the extension of credit to Plaintiffs was conditional, Country Motors violated TILA because it understated the Annual Percentage Rate, in that the monthly payments presume the extension of credit as of the date of the contract.

49. Country Motors further violated TILA because it failed to mark the conditional credit terms as estimates.

50. Country Motors is liable for statutory damages of $2,000 for its violations of TILA.

### B. Equal Credit Opportunity Act

51. Paragraphs 1-46 are incorporated.

52. In declining to extend credit to Helena, and by revoking credit that had been previously granted to George and Ryan as evidenced by the Contract, and in taking Plaintiffs' Vehicle without their consent, Country Motors took adverse action against Plaintiffs as defined in U.S.C. § 1691d(6) of the ECOA.

53. In violation of 15 U.S.C. § 1691d(1) and (2) of the ECOA, Country Motors failed to provide Plaintiffs with written notification as to the reasons for the adverse action and failed to provide them with written notification of (a) Plaintiffs' right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification and (b) the identity of the person or office from which such a statement may be obtained.

54. As a proximate result of Country Motors' violations of the ECOA, Plaintiffs suffered embarrassment, humiliation, mental distress and inconvenience, and they lost possession of their vehicle.

55. The acts complained herein were done by Country Motors intentionally, purposefully and/or in reckless disregard of Plaintiffs' rights.

56. Country Motors is liable to Plaintiffs for statutory punitive damages in an amount not greater than $10,000 pursuant to 15 U.S.C. § 1691e(b).

### C. Retail Installment Sales Financing Act

57. Paragraphs 1-46 are incorporated.

58. Country Motors repossessed the Vehicle one day before Plaintiffs' first installment payment was due under the Contract.

59. Country Motors repossessed the Vehicle without notice to Plaintiffs.

60. Country Motors disposed of the Vehicle that was owned by Plaintiffs.

61. Country Motors failed to provide Plaintiffs with written notice of the repossession under Conn. Gen. Stat. § 36a-785(c).

62. Country Motors failed to provide Plaintiffs with notice of the date and time of the public disposition of his Vehicle or, if the disposition was by private sale, with

notice that the disposition would be by private sale and the date after which a private sale would be conducted, as required by Conn. Gen. Stat. § 36a-785(d).

63. Country Motors failed to provide Plaintiffs with notice of the disposition of the proceeds of the sale of the Vehicle and failed to account to them for any surplus, in violation of Conn. Gen. Stat. § 36a-785(e).

64. Country Motors is liable to George and Ryan for the greater of their actual damages or one-quarter of the amount that they have paid under the retail installment contract, pursuant to Conn. Gen. Stat. § 36a-785(i).

### D. UCC Article 9 Violations

65. Paragraphs 1-46 are incorporated.

66. Country Motors repossessed the Vehicle one day before Plaintiffs first installment payment was due under the Contract.

67. Country Motors disposed of the Vehicle and failed to provide Plaintiffs with written notice of the date and time of the public disposition of this vehicle or, if the disposition was by private sale, with notice that disposition would be by private sale and the date after which a private disposition would take place, as required by Conn. Gen. Stat. § 42a-9-613 and § 42a-9-614.

68. Country Motors is liable to George and Ryan pursuant to Conn. Gen. Stat. § 42a-9-625(c)(2) for an amount equal to the credit service charge of $10,722.91 plus ten percent of the principal amount of the amount financed as shown on the Retail Installment Sales Contract, which amount equals $2,189.31 (10% x $21,893.09), for a total amount of $12,912.22.

### E. Connecticut Unfair Trade Practices Act

69.    Paragraphs 1-68 are incorporated.

70.    The actions of Country Motors in representing to Plaintiffs that George and Ryan had been approved for financing on the purchase of the Vehicle, then delivering the possession of the Vehicle to Plaintiffs, and then repossessing the Vehicle and reselling the Vehicle without notice to Plaintiffs, and its other conduct as previously alleged, constituted unfair and deceptive acts in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et. seq.*

71.    Plaintiffs' violations include *per se* violations under Conn. Agency Reg § 42-110b-28(b)(23) because Country Motors violated Conn. Gen. Stat. § 14-62(d) by not assigning title of the Vehicle to George and Ryan at the time that they executed the PO and because it violated Conn. Gen. Stat. § 14-62(h) by delivering the Vehicle prior to securing credit approval.

72.    Plaintiffs have suffered an ascertainable loss in that they lost the use and full value of the Vehicle.

73.    For Country Motor's violations of CUTPA, Plaintiffs seek actual damages, punitive damages and a reasonable costs and attorney's fee.

### F. Negligent Misrepresentation

74.    Paragraphs 1-46 are incorporated.

10

75. The actions of Country Motors, acting through its duly authorized employees for whose actions it is liable, in representing to Plaintiffs that their credit application had been approved.

76. The actions of Country Motors have caused Plaintiffs damages.

77. Plaintiffs have suffered emotional distress, aggravation, and embarrassment because of the defendant's actions.

**Wherefore, Plaintiffs claim** damages, statutory damages under TILA, actual and punitive damages under ECOA, minimum damages pursuant to Conn. Gen. Stat. § 36a-785(i), minimum damages under Conn. Gen. Stat. § 42a-9-625, actual and punitive damages under CUTPA, and such other further relief to which Plaintiffs are entitled at law or in equity.

          PLAINTIFFS, GEORGE S. MOORE, RYAN DAVID MOORE, and HELENA COLEMAN-MOORE,

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457
    dblinn@consumerlawgroup.com