# EXHIBIT A

**GEORGE S. MOORE, RYAN DAVID MOORE &**
**HELENA COLEMAN-MOORE**
**Claimants**

**V.**

**COUNTRY MOTORS II, INC.**
**d/b/a BOB'S BUICK GMC OF MILFORD**
**Defendant**

## ARBITER'S AWARD

The undersigned arbiter, having heard the testimony of George S. Moore, Helena Coleman-Moore and Mark Moore, and having further reviewed the various records and law submitted by the parties, and having further considered the arguments of counsel, hereby finds the following:

1. The plaintiffs brought the above-docketed action for violations of the Truth in Lending Act ("TILA"), Equal Credit Opportunity Act, 15 U.S.C. 1691, et seq. ("ECOA"), Connecticut Retail Installment Sales Financing Act ("RISFA") C.G.S. §36a-785, Article 9 of the UCC (C.G.S. §42a-9-101, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a, et seq. They also brought a common law claim of negligent misrepresentation.

2. The arbiter finds the following facts:
    a. Helena and Mark Moore went to Country Motors in November 2016 with the intention of purchasing a motor vehicle for their private use.
    b. Helena and Mark Moore chose Country Motors because Mark Moore had a middle school friend, Kenneth Boykin, who was a salesman with the dealership.
    c. Country Motors engaged in discussions with Mark and Helena Moore regarding their ability to qualify for financing.

d. Country Motors informed Helena that she did not have sufficient income to qualify for credit on her own and suggested that she find a family member to co-sign.

e. Helena and Mark initially asked George Moore to co-sign.

f. Kenneth Boykin told Helena verbally that she did not qualify for credit even with George Moore as the co-signor and requested that another family member serve as the co-signor on the loan.

g. George Moore and Ryan Moore agreed to co-sign the loan/financing application.

h. Helena never intended to go to anyone else other than the dealership for financing.

i. George and Ryan Moore signed the Retail Installment Contract and Purchase Order, both of which documents stated that Country Motors intended on selling to loan to Ally Financial.

j. After preliminary discussions regarding financing, Mark and Helena looked at vehicles on the lot and settled on a Red Nissan Altima, S model.

k. The S Model did not have a sun roof or navigation system.

l. Because the Moore's did not have a check and could not make the $1,000.00 down payment in one lumpsum, Kenneth Boykin, on behalf of Country Motors, took Helena Moore's debit card information and obtained authorization to process two payments of $500.00 each—one that Thursday and one two weeks from that date.

m. The use of the debit card rather than a check was as a convenience to Helena.

n. Helena authorized payment in two installments as specified.

o. The debits were never made.

p. Approximately one week after that appointment, on November 18, 2016, George Moore, Ryan Moore and Mark Moore went back to the dealership to sign the paperwork for the vehicle.

q. Only George Moore and Ryan Moore signed the paperwork.

r. Mark Moore did not sign but was present in the room at the time.

s. Helena Moore did not sign any paperwork and was not present for the signing at all.

t. The paperwork took approximately twenty minutes to a half an hour to process. George and Ryan Moore were given a copy of the documents, which they kept in the glove compartment of the car.

u. The Retail Installment Contract was executed on the same date by George Moore and Ryan Moore, listing Country Motors as the seller-creditor.

v. Country Motors set the terms of the Retail Installment Contract.

w. Mark Moore testified that he did not read any of the documents and that the process was fast moving.

x. Mark Moore admitted that he watched both George and Ryan sign the Conditional Delivery Agreement.

y. Mark Moore further testified that there were no representations as to the finality of the deal other than a handshake from Kenneth Boykin along with verbal congratulations.

z. George Moore testified that he "was just there to sign" and that he did not read the documents he was signing. He admitted that there was no time limit on signing

   the documents and that he was aware he would be obligated to make the payments on the loan in the event of a default by the other parties.

   aa. Ryan Moore did not appear to testify regarding his recollection of the events that transpired that day.

   bb. George, Ryan and Mark Moore drove the vehicle off the lot that day.

   cc. Kenneth Boykin had put dealer plates on the vehicle and represented that their plates should be in the mail within the week.

   dd. The permanent plates were never received.

   ee. The Moores did not call to inquire.

   ff. Mark and Helena used the car for approximately six (6) weeks.

   gg. On or around January 2, 2017, Kenneth Boykin informed Mark Moore that there was a problem with Ryan's work history or employment.

   hh. On or around January 2, 2017, Kenneth texted Mark and requested that they return the vehicle otherwise the police would have to get involved.

   ii. On or around that same date, Kenneth called George and requested return of the vehicle otherwise the police would have to get involved.

   jj. Mark Moore arranged for the vehicle to be picked up by Kenneth Boykin that same date.

   kk. The Moores were never charged anything for their use of the vehicle.

   ll. Neither George Moore nor Ryan Moore ever received any written notification that they were denied credit and/or the reasons for such denial.

3. The arbiter reaches the following conclusions of law based upon the facts found above:

a. The defendant dealership was a creditor within the scope of the ECOA. Pursuant to ECOA, 'creditor' means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit. The dealership acted as a creditor when it participated in the initial eligibility determination, set the terms of the retail installment sales contract and selected a lender to submit an application for which it would have retained a portion of the financing charges.

b. George and Ryan Moore were parties to the Retail Installment Sales Contract with Country Motors as the seller-creditor. Said contract was one document and did not violate RISFA. Plaintiffs argued that the Conditional Delivery Agreement was a supplement/change to that document and as such, that it was not valid. The evidence does not support the plaintiffs' claims. Rather, examination of the document itself reveals that it relates to and is made part of the Vehicle Purchase Order, dated November 18, 2016 (Ex. 1).

c. The Conditional Delivery Agreement was signed by both George and Ryan Moore. As such it was in effect at the time of the subject transaction. The Conditional Delivery Agreement sets forth three conditions under which the purchase of the vehicle has not yet been consummated. Those three conditions are listed in the disjunctive, meaning that only one of the three must apply. The three conditions are as follows: (1) you (the Dealer) have not yet received collected funds for the part of the Vehicle's purchase price which was paid by me by check; or (2) I have not executed a retail installment sales agreement and you have not yet found a financial institution willing to purchase such retail

installment sales contract from you; or (3) I intend to obtain financing for a source other than you, and such financing has not yet been approved. The arbiter finds sufficient evidence to suggest that either or both conditions (1) and/or (3) apply. Condition (1) applies because the dealer did not receive collected funds that were paid by the buyers by check. Condition (3) applies because the purchase order and the Retail Installment Contract both state that the financing would be obtained through Ally Financial and such financing was not approved.

4. The plaintiff, George Moore, sustained his burden of proof with respect to the defendant's violation of the Equal Credit Opportunity Act, 15 U.S.C. 1691, *et seq.* ("ECOA") only.

5. The plaintiff, George Moore did not sustain his burden of proof with respect to his claims pursuant to TILA, RISFA, Article 9 of the UCC and Negligent Misrepresentation. The plaintiff George Moore failed to prove that he suffered ascertainable damages as a result of the defendant's conduct and as such, failed to sustain his burden with respect to his claim under CUTPA.

6. The plaintiff, Helena Moore, sustained her burden of proof with respect to the defendant's violation of the Equal Credit Opportunity Act, 15 U.S.C. 1691, *et seq.* ("ECOA") only.

7. The plaintiff, Helena Moore did not sustain her burden of proof with respect to her claims pursuant to TILA, RISFA, Article 9 of the UCC and Negligent Misrepresentation. The plaintiff Helena Moore failed to prove that she suffered ascertainable damages as a result of the defendant's conduct and as such, failed to sustain her burden with respect to her claim under CUTPA.

8. The plaintiff, Ryan Moore, sustained his burden of proof with respect to the defendant's violation of the Equal Credit Opportunity Act, 15 U.S.C. 1691, *et seq.* ("ECOA") only.

9. The plaintiff, Ryan Moore did not sustain his burden of proof with respect to his claims pursuant to TILA, RISFA, Article 9 of the UCC and Negligent Misrepresentation. The plaintiff Ryan Moore failed to prove that he suffered ascertainable damages as a result of the defendant's conduct and as such, failed to sustain his burden with respect to his claim under CUTPA.

10. With respect to the ECOA claim, George Moore proved that he filled out a credit application with Bob's Buick GMC of Milford. (See Ex. 12) He signed application in two places indicating that the income entered was accurate and that he had read the terms of the Agreement and Disclosures contained therein. George Moore's loan application was declined. (See Ex. 14) Said denial constitutes an adverse action pursuant to ECOA, 15 U.S.C. § 1691(d)(6). No written notices were provided to George Moore to notify him of the creditor's action on the application or a statement of reasons for such adverse action.

11. The plaintiff, Ryan Moore, proved that he filled out a credit application with Bob's Buick GMC of Milford. (See Ex. 13) He signed application in two places indicating that the income entered was accurate[1] and that he had read the terms of the Agreement and Disclosures contained therein. Ryan Moore's loan application was declined. (See Ex. 14) Said denial constitutes an adverse action pursuant to ECOA, 15 U.S.C. § 1691(d)(6). No written notices were provided to Ryan Moore to notify him of the creditor's action on the application or a statement of reasons for such adverse action.

12. The plaintiff, Helena Moore, proved that she provided verbal information to Country Motors and was denied credit, both individually and also with her brother-in-law, George Moore,

---

[1] The defendants do not have a counterclaim or affirmative defense regarding this fact and as such, the arbiter does not reach the question of whether there is a valid defense to Ryan Moore's claims.

as a co-signor on the loan. Said denial constitutes an adverse action pursuant to ECOA, 15 U.S.C. § 1691(d)(6). No written notices were provided to Helena Moore to notify her of the creditor's action on the application or a statement of reasons for such adverse action.

13. The arbiter awards the following:

   a. George Moore a sum of $1,000 representing punitive damages pursuant to ECOA, plus attorney's fees with respect to litigation of this particular claim.

   b. Helena Moore a sum of $1,000 representing punitive damages pursuant to ECOA, plus attorney's fees with respect to litigation of this particular claim.

   c. Ryan Moore a sum of $1,000 representing punitive damages pursuant to ECOA, plus attorney's fees with respect to litigation of this particular claim.

14. The arbiter requests that the plaintiffs submit to both counsel and the arbiter any materials with regard to attorney's fees related to their the ECOA claims for consideration and supplemental award by the arbiter. Such materials shall be submitted no later than ten (10) days from receipt of this award. If defendant wishes to submit anything in response to the plaintiffs' submissions, it may do so within ten (10) days.

_____
Richard P. Renehan
Commissioner of the Superior Court